[Civ. No. 2165.   Fourth Appellate District.—December 16, 1938.]

J. I. BARBER, Respondent, v. GERMON QUATACKER et al., Appellants.

Forgy, Reinhaus & Forgy and A. M. Bradley for Appellants.

Harry C. Westover for Respondent.

BARNARD, P. J.—This is an action for damages for personal injuries sustained in an automobile collision. The accident occurred at the intersection of Fairview Avenue with Edinger Road, near Santa Ana. Edinger Road runs east and west and Fairview Avenue comes into it from the south, ending at its junction with Edinger Road. Both of these roads are paved. On the north side of Edinger Road and about opposite the east line of Fairview Avenue, a dirt road leads into a school yard. From a map drawn to scale, which is in evidence, it appears that the entrance to this school yard is about five feet in width. This private road into the · school yard is so situated that in order to enter it a person driving north on Fairview Avenue would, upon reaching this intersection, have to turn slightly to his right and cross Edinger Road.

On the occasion here in question the plaintiff drove north on Fairview Avenue and, as he reached the intersection, turned slightly to his right and crossed Edinger Road toward the entrance of the school yard. At the same time the defendants' car was being driven westerly on Edinger Road. When the plaintiff's car had almost reached the entrance to the school yard but while its rear wheels were still on the paved portion of Edinger Road, its rear portion was struck by the defendants' car, resulting in certain injuries to the plaintiff. Each driver saw the other car and the collision seems to have occurred because the plaintiff assumed that he could cross Edinger Road before the arrival of the defendants' car, which he saw approaching from the east, and the driver of defendants' car assumed that the plaintiff was going to proceed easterly on Edinger Road since he saw the plaintiff turn slightly to the right as he entered the inter-· section. A jury returned a verdict in favor of the defendants and they have appealed from an order granting the plaintiff's motion for a new trial.

In its order granting a new trial the court said:

" . . . In Defendants' Instruction No. 17, the Court instructed the jury that it is the duty of any person using a

public highway in this state to at all times have a sharp lookout for traffic upon intersecting highways. Throughout the trial and during the argument, the fact was emphasized that the plaintiff had lost the sight of one eye. The foregoing instruction imposed upon the plaintiff a greater burden than the law requires. He is only required to use ordinary care and caution while operating his vehicle upon a public highway, and I believe that this instruction imposing a greater duty upon him than the law requires, together with the fact that he had lost the sight of one of his eyes, might have been misleading, and, for that reason it is the opinion of the Court that a new trial should be granted.''

Instruction No. 17, referred to by the court, reads as follows:

''You are instructed that it is the duty of any person using a public highway in this state to at all times to have a sharp lookout for traffic upon intersecting highways, and if you find from the evidence that the plaintiff was not using due care and caution in approaching or traversing the intersection of Fairview and Edinger Streets, such conduct on his part constituted negligence as a matter of law, and in the event that such conduct contributed directly or proximately in any degree, no matter how slight, to the accident, your verdict shall be against the plaintiff and in favor of the defendants.''

The appellants contend that the care required of an automobile driver is always reasonable care; that while this standard never varies the care which is reasonably required varies with the danger involved and is proportionate thereto; that an intersection is especially dangerous and calls for the exercise of a higher degree of care; that the fact that the respondent had but one eye was a circumstance requiring additional alertness on his part in order to meet the standard of ordinary care; that under the circumstances here appearing the instruction referred to was entirely correct; and that since no error appears the court abused its discretion in granting a new trial. They rely principally on the case of *Berlin* v. *Violett*, 129 Cal. App. 337 [18 Pac. (2d) 737], where the jury was told that drivers of vehicles are required to keep a vigilant lookout ahead so as to avoid, if possible, a collision with others, and on *Mathews* v. *Dudley*, 212 Cal. 58 [297 Pac. 544], where the jury was instructed that a driver must at all times be vigilant and must anticipate the presence of

others. It is argued that the words "sharp lookout" used in the instruction in the instant case are practically synonymous with the words used in the instructions given in these other cases and that, therefore, no error appears. In neither of the cases cited was the question of the granting of a new trial involved. In each of those cases it would appear that the driver in question failed to see the other car, and in neither of those cases does it appear that the jury was not fully and properly instructed with reference to what constitutes negligence and reasonable care.

The trial judge has a wide discretion in passing upon motions for a new trial and the fact that a certain instruction has been held proper under certain circumstances does not necessarily mean that it would not be error to use the same or similar language in a case involving different circumstances. In *Olinger* v. *Pacific Greyhound Lines*, 7 Cal. App. (2d) 484 [46 Pac. (2d) 774], in considering the relation of the provisions of section 4½ of article VI of the Constitution to the granting of a new trial, this court said:

"Of course, these provisions are as binding on the trial judge as on the members of an appellate court. This being so we must assume that the trial judge in granting the motion for new trial performed his duty, examined the entire cause including the evidence and concluded that the errors resulted in a miscarriage of justice. In so doing he was required to consider the credibility of the witnesses, their manner of testifying on the stand, and the weight and sufficiency of the evidence. While the trial judge should not lightly set aside a judgment still it is his duty in passing on a motion for new trial to review the cause a second time as a trier of fact and after such review decide the motion. Trial judges are given a wide latitude in exercising a sound discretion in passing on motions for new trial and an order granting such a motion will not be disturbed on appeal unless there has been an abuse of such discretion."

In *Breeze* v. *Southern Petro. T. L. Co.*, 5 Cal. App. (2d) 507 [43 Pac. (2d) 584], an order granting a new trial was affirmed, one of the errors of law being that the court instructed the jury that it was the plaintiff's duty while operating her car "to keep a close lookout". In that case, the court said:

"By the use of the word 'close' in connection with 'lookout', the court went beyond the requirements of the law. Instructions stating that a 'proper lookout' shall be kept by the driver of an automobile have been repeatedly given and approved on appeal, solely on the ground that to keep a proper lookout means only the exercise of that degree of care which a prudent man should use under like circumstances and which is the degree of care which the law imposes."

In the instant case the court instructed the jury that it was the duty of a driver "to have a sharp lookout for traffic upon intersecting highways", and then went on to say that if the respondent was "not using due care and caution" at the place here in question such conduct constituted negligence on his part as a matter of law. Although the appellants had set up the defense that the accident was caused by the contributory negligence of the respondent and the further defense that the accident was caused solely by the negligence of the respondent the court, in its instructions, failed to define negligence or ordinary care or to give any of the usual instructions in that regard, except that in one long instruction on contributory negligence the following language was included: "By contributory negligence is meant the lack of such care and caution as a person of ordinary prudence would have exercised under the same or similar circumstances." Under the evidence an exceedingly close case was presented and instead of the usual instructions in this regard the jury was told that a driver must at all times have a sharp lookout for traffic and that if the respondent was not using due care and caution he was negligent.

In view of the fact that the respondent had lost one eye, which fact had been greatly emphasized throughout the trial, it is not unreasonable to believe that the jury took the court's instruction as meaning that the duty rested upon the respondent of using an unusual degree of watchfulness and that if he failed in that regard he was not using due care and caution. In view of the evidence and the circumstances here appearing the court was justified in feeling that a greater burden than the law requires had been imposed upon the respondent, and that the jury might have been misled thereby. It further appears that the respondent did see the other car and the real question involved was not as to any failure to look or to observe on the part of the respondent, but as to his

possible negligence in proceeding on his course after he saw the location of the other car. While the jury was not clearly instructed on the main issue the matter of his looking was not only emphasized in the evidence and argument, but by the instruction in question a very strict, if not a rather unusual, duty in that regard was placed upon him by the court. In view of the situation which prevailed here, we think the court did not abuse its discretion in granting the motion for a new trial.

The order is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 10, 1939.